UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1099 (DSD/JMM)

McNeilus Truck and Manufacturing, Inc., a Minnesota corporation,

Plaintiff,

v.

**ORDER**

Byron Hunt,

Defendant.

Gerald S. Duffy, Esq., Brenna E. Nelson, Esq., and Siegel, Brill, Greupner, Duffy & Foster, 1300 Washington Square, 100 Washington Avenue South, Minneapolis, MN 55401, counsel for plaintiff.

Ken D. Schueler, Esq., Sharon Zehe, Esq., and Dunlap & Seeger, 206 South Broadway, Suite 505, Rochester, MN 55903, counsel for defendant.

This matter is before the court on plaintiff's motion to remand and defendant's motion to dissolve or modify the temporary restraining order ("TRO") issued by the Dodge County District Court. Based on a review of the file, record, and proceedings herein, and for the reasons stated, the court denies plaintiff's motion and denies defendant's motion as moot.

**BACKGROUND**

Byron Hunt ("Hunt") was hired by McNeilus Truck and Manufacturing, Inc. ("McNeilus") as a sales representative in 1982.

FILED 7-23-01
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. ____
Deputy Clerk's Initials ____

(Nelson Aff. Ex. A.) Hunt received various promotions and was working in the position of Southern California branch manager for McNeilus when he voluntarily terminated his employment in August 1985. (Id. ¶ 3.)

In 1989, Hunt was rehired by McNeilus and resumed employment as a branch manager for the southeastern United States. (Id. ¶ 6; Nelson Aff. Ex. B at 1.) On June 19, 1989, Hunt signed an employment agreement, which contains a non-compete clause asserting that if Hunt left the employ of McNeilus, he could not sell concrete mixers and refuse packers within the United States for a period of five years from the date of termination. (Eckstein Aff. at 1; Nelson Aff. Ex. B at 4, 5.)

In the spring of 1992, Hunt was promoted to southern regional manager, which added the Dallas branch office to his territory. (Nelson Aff. Ex. A ¶ 6.) In April 1997, Hunt was made vice president and regional manager and the Ohio branch was added to his supervised territory. (Id. ¶ 6.) In September 1999, McNeilus informed Hunt that his position would be abolished and offered him an alternative position at a compensation of less than one-half his current pay. (Id. ¶ 9; Lanzdorf Aff. ¶ 2.) Hunt decided to resign rather than take the alternative position. (Id. ¶ 9; Lanzdorf Aff. ¶ 4.) Hunt worked in various jobs until May 9, 2001, when he started a job with Continental Manufacturing Co., Inc., ("Continental"), a competitor of McNeilus.

On June 11, 2001, McNeilus filed suit in Dodge County District Court asserting that through his employment with Continental, Hunt is acting in breach of his non-compete agreement and is misappropriating trade secrets. The prayer contains a request for injunctive relief as well as damages and attorneys fees.

On June 12, 2001, the Dodge County District Court issued an ex parte temporary restraining order enjoining Hunt from "working with any business similar to or in competition with McNeilus in the United States." (6/12/01 Temp. Rest. Order.) Hunt removed the case to federal district court on June 18, 2001, and filed a motion to modify or dissolve the TRO. McNeilus subsequently filed a motion to remand the case to state court.

## DISCUSSION

### I. Motion to Remand

Federal courts are courts of limited jurisdiction. Owen Equip. & Erection Co. v. Kroeger, 437 U.S. 365, 374 (1978). A lack of federal subject-matter jurisdiction cannot be waived. Id.; Magee v. Exxon Corp., 135 F.3d 599, 601 (8th Cir. 1998). An action may be removed to federal court only if the case presents a federal question or the requirements for diversity jurisdiction have been met. See 28 U.S.C. § 1441. The purpose of the removal statute is to restrict and limit removal jurisdiction, therefore the statute is to be construed narrowly and any doubt should be resolved

against removal jurisdiction. American Fire & Cas. Co, v. Finn, 341 U.S. 6 (1951). See also Johansen v. Employee Ben. Claims, Inc., 668 F. Supp. 1294, 1295-96 (D. Minn. 1987) (discussing the rationale for narrowly construing the removal statute and noting defendant's burden of showing the action was properly removed).

Diversity jurisdiction under 28 U.S.C. § 1332 is available in all civil matters where the amount in controversy exceeds $75,000 and is between citizens of different states or citizens of a state and subjects of a foreign state. Where, as here, the parties concede that complete diversity of citizenship exists between the parties, the court's analysis focuses upon the requisite amount in controversy threshold of $75,000. Blair v. Source One Mortgage Servs. Corp., 925 F. Supp. 617, 622 (D. Minn. 1996).

The party asserting federal jurisdiction has the burden of establishing that the amount in controversy requirement is met. Hatridge v. Aetna Casualty & Surety Co., 415 F.2d 809, 814 (8th Cir. 1969). Where the complaint on its face alleges damages in excess of the jurisdictional amount and, "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." St. Paul Mercury Indem. Co. v. Red Cab. Co., 303

U.S. 283, 289 (1938). However, when the plaintiff's complaint does not allege a specific amount, the "legal certainty" standard does not apply. McCorkindale v. American Home Assur. Co./A.I.C., 909 F. Supp. 646, 651 (N.D. Iowa 1995). "When the complaint does not allege a specific amount, the removing defendant must prove by a preponderance of the evidence that the amount in controversy meets the jurisdictional amount." Dyrda v. Wal-Mart Stores, Inc., 41 F. Supp. 2d 943, 948 (D. Minn. 1999). The removing defendant can sufficiently meet that burden by submitting proof that a plaintiff's verdict reasonably may well exceed that amount, or if, on the face of the complaint, it is apparent that the claims are likely above that amount. Gilmer v. Walt Disney Co., 915 F. Supp. 1001, 1007 (W.D. Ark. 1996)(citation omitted).

Hunt contends that in this case, where McNeilus asserts that it faces three and one-half years of significant financial loss due to Hunt's employment with a McNeilus competitor, McNeilus's claim for damages likely exceeds $75,000. McNeilus counters that its damages in this action will not exceed $75,000 because the damages are "inestimable."[1] The mere assertion of "inestimable" damages

[1] In a supplement memorandum filed with the court, McNeilus also stipulates that it is not seeking monetary damages. (Pltf. Supp. Mem. in Supp. of Mot. to Remand, at 7-8.) However, its complaint still contains a specific prayer for an award of damages. (Complaint at 9, ¶ 5.) A subsequent change, such as the plaintiff's post-removal voluntary reduction of his claim to less than the jurisdictional amount, does not defeat federal jurisdiction acquired through removal. Hatridge, 415 F.2d at 814.
(continued...)

conjures up the image of a significant loss. Morever, the court believes that potential for damages are easily calculated from information provided by Hunt. Hunt indicates that approximately 6,000 mixer trucks are sold in the United States each year. The average cost of those trucks is $100,000. This means that over the next three and one-half years (the amount of time remaining on Hunt's noncompete agreement clause), $2.1 billion worth of mixer trucks will be sold in the United States. (Second Hunt Aff. ¶ 2.)

The court does not know how much profit McNeilus earns on each truck sale, but given these overall sales figures and McNeilus's claim that Hunt has the information necessary to significantly undercut McNeilus's pricing structure for the indefinite future, it seems likely that Hunt's sales for Continental will cost McNeilus in excess of $75,000 in lost profits. This figure does not even take into account the attorneys' fees being sought in this case, which must also be included in the calculation of the amount in controversy. Peterson v. BASF Corp., 12 F. Supp. 2d 964, 968 (D. Minn. 1998). Thus, the court concludes that Hunt has established

[1](...continued)
Moreover, "'[t]he important issue of whether a federal court has jurisdiction over a lawsuit on the basis of the amount in controversy should be decided on the basis of substance, not gamesmanship.'" Dryda, 41 F. Supp. at 949 (quoting Bolling v. Union Nat. Life Ins. Co., 900 F. Supp. 400, 405 (M.D. Ala. 1995)).

by a preponderance of the evidence that the damages claimed by McNeilus exceed the $75,000 jurisdictional requirement. Therefore, plaintiff's motion to remand is denied.

**II. Motion to Dissolve or Modify the Temporary Restraining Order**

Hunt moves the court for an order dissolving or modifying the ex parte temporary restraining order issued by the Dodge County District Court. McNeilus "requests that the Court not disrupt the temporary restraining order and direct the parties to submit evidence for consideration of a preliminary injunction." (Pltf.'s Mem. in Opp. To Def. Mtn. at 8).

Rule 65(b) of the Federal Rules of Civil Procedure provides that a temporary restraining order granted without notice cannot remain in effect for more than ten days unless extended for good cause by the district court or consented to by the adverse party. Hunt has not consented to an extension of the TRO. In addition, the issue of whether McNeilus has established good cause to extend the order is moot because the court's authority to extend an ex parte temporary restraining order is limited to ten additional days beyond the original date of expiration. Fed. R. Civ. P. 65(b) (Ex parte temporary restraining orders shall not "exceed 10 days, as court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period."). See also Granny Goose Foods, Inc. v.

Teamsters Local No. 70, 415 U.S. 423 (1974) (emphasizing that temporary restraining orders can remain in force no longer than the time limitations imposed by federal rule.)

The maximum potential time period for maintaining the June 12, 2001, temporary restraining order has now passed, therefore the order has expired and defendant's motion to dissolve or modify the order is denied as moot. Should McNeilus wish to take advantage of the procedures available to it under Rule 65 to obtain a preliminary injunction, the court will conduct a full analysis of McNeilus's claims under the factors set forth in Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981).

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion to remand is denied.

2. Pursuant to Fed. R. Civ. P. 65, the June 12, 2001, temporary restraining order issued by the Dodge County District Court has expired, therefore defendant's motion to dissolve or modify that order is denied as moot.

Dated: July 23, 2001

David S. Doty, Judge
United States District Court

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500